(No. 13226.—Judgment affirmed.)

BARBARA KUHNE, Appellant, *vs.* THE SANITARY DISTRICT OF CHICAGO, Appellee.

*Opinion filed October 23, 1920.*

1. SANITARY DISTRICTS—*when a declaration for damages from overflow does not state cause of action.* The Sanitary District act, under which the Sanitary District of Chicago was organized, requires said district to maintain a constant flow of not less than 20,000 cubic feet of water per minute for 100,000 population, and a declaration for damages from overflow which merely alleges a willful violation of the statute by the district, in that it has caused a flow in excess of said amount, does not state a cause of action.

2. SAME—*flow into Illinois river from Sanitary District of Chicago may be increased from year to year.* The act for the organization of the Sanitary District of Chicago authorizes an increase in the flowage from the district into the Illinois river, and the requirement that such increase shall be permanent and the flow constant does not mean that the flowage cannot be increased from year to year.

3. SAME—*what necessary to a cause of action against Sanitary District of Chicago for damages from overflow.* Under the act for

the organization of the Sanitary District of Chicago, to maintain a cause of action against the district for damages from the overflowing of the Illinois river it is necessary to show that the acts of the defendant within the five years prior to the commencement of the suit have created a condition different from that existing prior to the five-year period, and that as a result of such condition damages have accrued to the plaintiff.

4. SAME—*when violation of Federal laws does not give private right to damages against the Sanitary District of Chicago.* In an action against the Sanitary District of Chicago for damages from the overflowing of the Illinois river, the question whether or not the flowage into the river is in excess of the amount permitted by the Federal government is not material and cannot be made the basis of a count in the declaration, as the right to damages must be due to a violation of the duties imposed upon the district by the common law and the statute.

STONE, J., dissenting.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding.

WARREN PEASE, (CHARLES P. MOLTHROP, of counsel,) for appellant.

C. ARCH WILLIAMS, and WALTER E. BEEBE, (WILLIAM E. HELANDER, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is prosecuted to review a judgment of the Appellate Court for the First District affirming the judgment of the circuit court of Cook county sustaining demurrers to plaintiff's amended second and third counts of a declaration filed May 21, 1915, in her suit for damages for injuries to crops, timber and pasturage upon certain lands owned by her and lying along the Illinois river, in Putnam county. The cause was formerly before this court in *Kuhne v. Sanitary District,* 285 Ill. 129, and was transferred to

the Appellate Court on jurisdictional grounds. The cause is here again on a certificate of importance from that court.

The first question presented is whether or not the amended second and third counts state a cause of action against the defendant. The amended second count alleges the ownership by plaintiff of certain timber land, pasture land and farm land lying adjacent to and near the Illinois river; that the defendant, during the five years immediately prior to the beginning of this suit, caused water to flow through its canal from Lake Michigan through intermediate streams into the Illinois river above the plaintiff's lands; that defendant possessed certain controlling works whereby it could control the flowage of water through its canal; that "said defendant is a corporation organized under and pursuant to an act of the legislature of the State of Illinois and known as 'An act to create sanitary districts and to remove obstructions in the Desplaines and Illinois rivers,' approved May 29, 1889, and in force from and after July 1, 1889; that by the terms of said act the defendant was authorized to flow waters through said canal and into the Illinois river aforesaid, the amount of said flowage to be based upon the population of the district and to be a steady, uniform flowage based upon said population and increasing only as said population increased, and that in exercising and enjoying its rights under the said statute the defendant was required to observe the conditions, obligations and stipulations of said statute and was required so to keep and maintain a steady, uniform flowage, the amount of which was to be so based upon said population and increasing only as said population increased, but, contrary to its legal duty in that behalf and in violation of such statute, the said defendant did not maintain a steady, uniform flow of water through said canal during the period of five years aforesaid, based upon said population, but at times greatly increased said flow beyond the amount authorized by said statute and without regard to

said population of said district, and it willfully refused to base said flowage upon said population of said district, contrary to the statute in that case made and provided, and thereby and by reason thereof, and because of said flowage in violation of said statute during the five-year period aforesaid, great volumes of water at times were carried through said canal and cast into the said Illinois river, causing said Illinois river at such times of such increase of flowage to overflow its banks, so that said Illinois river at the times aforesaid has overflowed its banks at or near the lands of plaintiff, so that the said waters of said Illinois river have at such times overflowed onto, across and upon and intermittently and temporarily soaked and permeated said lands for a portion of each of the said five years." The plaintiff then alleges damages to her trees, pasturage and crops caused by said use of said canal, and sets forth that the liability of said defendant for said act of trespass was further imposed by reason of section 19 of the aforesaid statute, wherein it is provided: "Every sanitary district shall be liable for all damage to real estate within or without such district which shall be overflowed or otherwise damaged by reason of the construction, enlargement or use of any channel, ditch, drain, outlet, or other improvement, under the provisions of this act."

Section 20 of the Sanitary District act (Hurd's Stat. 1917, p. 422,) provides that "any channel or outlet constructed under the provisions of this act which shall cause the discharge of sewage into or through any river or stream of water beyond or without the limits of the district constructing the same shall be of sufficient size and capacity to produce a continuous flow of water of at least 200 cubic feet per minute for each 1000 of the population of the district drained thereby, and the same shall be kept and maintained of such size and in such condition that the water thereof shall be neither offensive or injurious to the health of any of the people of this State; * * * and said dis-

trict shall, at the time any sewage is turned into or through any such channel or channels, turn into said channel or channels not less than 20,000 cubic feet of water per minute for every 100,000 inhabitants of said district, and shall thereafter maintain the flow of such quantity of water." Section 23 of said act provides that "if any channel is constructed under the provisions hereof by means of which any of the waters of Lake Michigan shall be caused to pass into the DesPlaines or Illinois river, * * * if the population of the district draining into such channel shall at any time exceed 1,500,000, such channel shall be made and kept of such size and in such condition that it will produce and maintain at all times a continuous flow of not less than 20,000 cubic feet of water per minute for each 100,000 of the population of such district, at a current of not more than three miles per hour." And section 25 of said act provides for the joining of other territory to the district, and provides that "where the united flow of any sanitary districts thus co-operating shall pass into any channel constructed within the limits of the county wherein such districts are located, and which passes into the DesPlaines or Illinois rivers, such united flow shall in no case and at no time be less than 20,000 cubic feet of water per minute for each 100,000 of the aggregate of the population of the districts co-operating."

It will thus be seen from an examination of the act under which defendant is organized that it is authorized to flow a sufficient amount of water to properly dilute the sewage and render the water not offensive or injurious to the health of any of the people of the State, provided that the amount of water to be flowed shall in no case be less than 20,000 cubic feet of water a minute for each 100,000 of the population of the district. Plaintiff contends that the 20,000 cubic feet is the maximum amount of water authorized to be flowed through the channel, and that the flowing of a greater amount through the channel is un-

authorized and therefore unlawful. That this contention cannot be sustained seems too plain to require argument. If the defendant flowed through its channel an unreasonably large amount of water, thereby causing damage to plaintiff's property, it would, no doubt, be liable for such damage. If such occurrence took place, the declaration could plainly state the facts in such language that the defendant could prepare to meet the charge. The statute requires that the defendant shall maintain a constant flow, and if more water is emptied into the channel of the river at some times than at others, thereby causing temporary overflows of lands, then the defendant would be liable for the resultant damage. This does not mean, however, that the flowage cannot be increased from year to year. The statute authorizes an increase in the flowage as the population increases, but when such increases are made the increase will be permanent and the flow will still be constant. In order to state a cause of action it is necessary for the plaintiff to show that the acts of defendant within the five years prior to the commencement of the suit have created a condition different from that existing prior to the five-year period, and that as a result of the condition thus created within the five-year period damages have accrued to the plaintiff. This the declaration does not show. There is no allegation that the water flowed in excess of 20,000 cubic feet for each 100,000 of population was unnecessary for the proper dilution of the sewage. The claim for damages is based upon a willful violation of duty by the officers of the defendant, and the defendant is therefore entitled to be advised of the specific charge or charges it is called upon to meet. This count does not state a cause of action and the court properly sustained the demurrer.

The amended third count contains the same allegations as to ownership of lands, their location and character, the operation of the canal by the defendant and the possession by the defendant of controlling works whereby the flow of

water could be controlled by defendant, and then proceeds as follows: "That at all times during the five years immediately preceding the beginning of this suit the said Chicago river and the said artificial channel of the defendant and the said Illinois river and the said Lake Michigan were navigable, and being so navigable were subject to the jurisdiction and control of the United States of America and of the War Department of said United States, that at all times during the five years preceding the commencement of this suit the government of the United States of America, through and by the agency of the Secretary of War, had the legal right to stipulate and fix the volume and quantity of water which the defendant could take from said Lake Michigan and the Chicago river, flow through its canal and cast into the said Illinois river, and that said government of the United States, through and by the Secretary of War, during all the time within said five years preceding the commencement of this suit did in writing legally stipulate, fix and restrict the amount and quantity of water which could be legally admitted and caused to flow from Lake Michigan into said navigable streams at a quantity not to exceed 250,000 cubic feet per minute, and that during all and every part of the said five years immediately preceding the commencement of this suit it was the legal duty of the defendant to limit and restrict and control the quantity of water admitted and flowed by the defendant through its said channels and controllers and other appliances from said Lake Michigan and said Chicago river and into and through its said canal and into said Illinois river at said stipulated and restricted amount of 250,000 cubic feet of water per minute; that notwithstanding the premises and the duty of defendant as aforesaid, the said defendant did continuously and throughout said period of five years, in violation of its rights and duties and the rights of plaintiff, and in total disregard and willful disobedience of the orders of limitation of flowage so fixed by the Secretary of War,

wrongfully and willfully admit and cause to flow from Lake Michigan and the Chicago river into and through its said channel and into and through the DesPlaines and Illinois rivers, quantities of water greatly in excess of 250,000 cubic feet per minute, and thereby and because of said violation of said order, stipulation and restriction of the said Secretary of War of the United States of America said waters so in excess of said stipulated amount of 250,000 cubic feet per minute wrongfully flowed through said canal and into said Illinois river caused the waters of said Illinois river to be greatly increased in volume and quantity and caused said Illinois river at times to overflow its banks, so that the same has at times during said five years overflowed its banks at or near the aforesaid lands of the said plaintiff, and said waters of said Illinois river by reason thereof have at times during said period overflowed onto and across and upon and soaked and permeated said lands for a portion of each of said five years." The count concludes with allegations of damages and the allegation that the liability of defendant to the plaintiff for said trespass upon her lands was further imposed by virtue of the same statute relied upon in the second amended count.

It is contended by plaintiff that the violation by the defendant of the permit of the Secretary of War limiting the flowage through defendant's canal was an unlawful act, and that any damage caused to the lands of plaintiff by the flowage of any quantity of water in excess of 250,000 cubic feet a minute was damage caused by the unlawful act of defendant, and therefore damages that could not be anticipated and recovered for by plaintiff during the five years following the opening of the canal. Under this count plaintiff claims damages arising from the violation of this permit of the Secretary of War,—at least this is the position of plaintiff in her original brief; but in her reply brief, in answer to defendant's contention that no cause of action can be based upon a violation of a Federal permit of this char-

acter, she says that "it is not claimed, and never has been claimed, that the violation of the Federal permit created a cause of action because of its violation. Appellant's right to recover damages to her lands existed at common law and is merely declared by the organic statute of appellee. * * * The violation of the Federal permit neither added to nor took from her right to recover. It only designates the form of action and the manner in which her damages are measured." Whether or not the flowage of water through this canal in excess of the amount permitted by the Federal government is an unlawful act is immaterial in this case. The Federal government retains control over the navigable waters of this country solely in the interest of commerce and navigation. The diversion of the waters of Lake Michigan through an artificial channel into the Illinois river, even in violation of the Federal laws, would not create a private right of action in plaintiff unless by such diversion plaintiff suffered damage. It is necessary, therefore, for this count of the declaration to state facts from which it can be ascertained that the damage accruing to plaintiff grows out of a situation brought about by the wrongful acts of defendant within five years prior to the commencement of the suit. The liability of defendant is dependent, not upon the violation of this Federal permit but upon a violation of the duty imposed upon it by the common law and the statute. The amended third count did not state a cause of action at common law, as contended by plaintiff, and the court properly sustained the demurrer.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE STONE, dissenting.